**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD ASSOCIATION, | Case No. 09-cv-7935 |
| Plaintiff, | |
| v. | District Judge Virginia Kendall |
| UHS OF DELAWARE, INC., UHS OF TEXOMA, INC., TEXOMACARE, UNIVERSAL HEALTH SERVICES, INC., and DOES 1-10, inclusive, | Magistrate Judge Geraldine Soat Brown |
| Defendants. | |

**PLAINTIFF BLUE CROSS AND BLUE SHIELD ASSOCIATION'S MEMORANDUM IN OPPOSITION TO UHS OF TEXOMA, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, UHS OF DELAWARE, INC.'S AND UNIVERSAL HEALTH SERVICES, INC.'S MOTION TO DISMISS FOR FAILURE TO JOIN AN INDISPENSABLE PARTY, AND ALL DEFENDANTS' MOTION TO TRANSFER VENUE**

*Attorneys for Plaintiff*

Anthony C. Valiulis
Cassandra M. Crane
Much Shelist Denenberg
 Ament & Rubenstein PC
191 North Wacker Drive
Suite 1800
Chicago, Illinois 60601
312-521-2000

Lawrence M. Cirelli
Susan G. O'Neill
Garner K. Weng
Hanson Bridgett LLP
425 Market Street, 26th Floor
San Francisco, CA 94105
415-777-3200

2341334.7

## I. INTRODUCTION

Long headquartered in Illinois, Plaintiff Blue Cross and Blue Shield Association ("Blue Cross") is a federation of independent, locally-operated health-benefits companies. It owns the BLUE CROSS design marks—which were first used in the '30s, first issued U.S. federal registrations in the '50s, and held to be famous in court decisions going back to the '80s. The BLUE CROSS marks are among the most recognized brands in the healthcare and insurance industries. Blue Cross protects these marks on behalf of itself and its licensees—including Health Care Service Corporation (HCSC). Also headquartered in Illinois, HCSC is licensed to use the BLUE CROSS marks in its operation of health-benefits plans in several states. For instance, HCSC does business as Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Texas (in those states). Unauthorized blue cross logos are likely to confuse the public into thinking a hospital or other facility is more closely sponsored by or affiliated with Blue Cross (or one of its licensees like HCSC) than it is—as well as dilute the strength of the BLUE CROSS marks.

Though Defendant UHS of Texoma paints itself as having no contacts to Illinois, it is a participating provider in Illinois resident HCSC's Blue Cross and Blue Shield network. This relationship is substantial and ongoing: each year, UHS of Texoma submits 9,000-10,000 claims to HCSC and receives $13-15 million from HCSC. UHS of Texoma has also treated hundreds of patients who are members of Blue Cross and Blue Shield of Illinois—each being further and separate contacts with Illinois.

Equally or more importantly, UHS of Texoma concedes that it had prior notice of Plaintiff's rights in BLUE CROSS marks; and it concedes that it had prior notice of HCSC's licensed use of BLUE CROSS marks. Despite this, UHS of Texoma recently changed its main uses of a cross logo—a Greek cross that is the same shape as Plaintiff's BLUE CROSS marks— from the color black to the color blue. It thereby intentionally and knowingly directed its infringing and diluting acts toward two Illinois residents, Blue Cross and HCSC. This caused

harm to Illinois residents in Illinois. The Court at a minimum has specific jurisdiction over UHS of Texoma under the *Calder* "effects doctrine"[1] and should deny the motion to dismiss.

Defendants concede jurisdiction and venue for UHS of Delaware and Universal Health Services.[2] If the Court denies UHS of Texoma's motion to dismiss for lack of jurisdiction/venue, Defendants' motion to dismiss claiming UHS of Texoma is an indispensable party is moot. In any event, **UHS of Texoma does not even own the accused mark**; rather, it is a wholly-owned subsidiary and mere licensee of Universal Health Services and UHS of Delaware. Several trademark cases evaluating subsidiaries/ licensees have concluded that such parties are not necessary (and therefore not indispensable) under the Federal Rules. The Court should similarly deny Universal Health Services' and UHS of Delaware's motion to dismiss.

Finally, Defendants' motion to transfer venue to the Eastern District of Texas ignores important facts such as the location of party witnesses and documents in Illinois, Pennsylvania, and other states. Looking at the complete picture, Defendants' motion simply seeks to shift the inconvenience to Blue Cross—even at the price of shifting inconvenience also to Defendants Universal Health Services and UHS of Delaware, who are both headquartered in Pennsylvania. The Court should therefore deny Defendants' motion to transfer.

## II. OVERVIEW OF DEFENDANT COMPANIES[3]

Defendant Universal Health Services is a Fortune 500 company that calls itself "one of the nation's largest hospital companies" and has a large nationwide system of hospitals and medical facilities.[4] Defendant UHS of Delaware is the "management subsidiary" for this system.[5] Defendant UHS of Texoma did not exist until November 2006.[6] It was formed in connection with Universal Health Services' acquisition of assets (medical facilities) of non-party Texoma

---

[1] *See, e.g., Pharmerica Corp. v. Adv. Healthcare Sol'ns, LLC,* Case No. 10 C 349, 2010 WL 1417460, *3 (citing *Calder v. Jones,* 465 U.S. 783, 788-90 (1984)).
[2] Both are registered to business in and have registered agents for service of process in Illinois.
[3] Plaintiff will discuss most of the operative facts in its discussion of the legal issues, below.
[4] *See* Plaintiff's Req. for Jud. Ntc. ("Req. for Jud. Ntc.") Ex. A.
[5] *See* Req. for Jud. Ntc. Ex. A.
[6] *See* Req. for Jud. Ntc. Ex. I.

Health Care System, which transaction closed in January 2007.[7] UHS of Texoma now operates facilities in Texas and Oklahoma[8] and also has offices in Pennsylvania.[9]

Contrary to its moving papers, ***UHS of Texoma does not own or control the defendant mark at issue*** (the "Texoma Blue Cross Mark").[10] Rather, UHS of Delaware claims ownership of the Texoma Blue Cross Mark. It filed in its own name six applications for federal registration of marks incorporating the Texoma Blue Cross Mark[11]—stating it allows use by related companies or licensees.[12] UHS of Texoma is a mere licensee of the Texoma Blue Cross Mark.[13]

### III.    DISCUSSION

**A.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT UHS OF TEXOMA BECAUSE OF ITS ONGOING CONTACTS WITH ILLINOIS AND ITS INTENTIONAL DIRECTION OF HARM TO ILLINOIS RESIDENTS.**

**1.    Plaintiff Blue Cross only needs to make a prima facie showing of personal jurisdiction—and the Court must resolve any conflicts in the Parties' evidence in Blue Cross's favor.**

For this motion, the Court must accept all uncontroverted allegations in the Complaint as true[14]—and must resolve any conflicts in evidence in favor of Plaintiff.[15] Additionally, Plaintiff only needs to make out a prima facie case for jurisdiction.[16]

The Illinois long arm statute allows personal jurisdiction "on any . . . basis now or hereafter permitted by the Illinois Constitution and the [U.S.] Constitution. . . ."[17] Therefore, personal jurisdiction is proper "if the defendant has 'minimum contacts' with the forum state

---

[7] *See* Req. for Jud. Ntc. Ex. B.
[8] *See* Req. for Jud. Ntc. Ex. G.
[9] *See* Req. for Jud. Ntc. Ex. I, J, K.
[10] *See* Defendants' Memorandum at 10 (arguing, "The Texoma Mark is controlled by Texoma and Texoma alone," without citation to any evidence); Estes Decl. (making no mention of ownership or control of mark at issue).
[11] *See* Req. for Jud. Ntc. Ex. F.
[12] *See id.*
[13] *See* Complaint ¶ 18.
[14] *Pharmerica Corp. v. Adv. Healthcare Sol'ns, LLC,* Case No. 10 C 349, 2010 WL 1417460, *2 (N.D. Ill. Apr. 5, 2010) ("the Court accepts all well-pleaded factual allegations in the Complaint as true unless controverted by affidavits outside the pleadings").
[15] *Id.* at *2 ("Factual disputes are construed in the plaintiff's favor.");.
[16] *See, e.g., id.* at *5.
[17] 735 Ill. Comp. Stat. 5/2-209(c) (2010).

'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"[18] The Court may find general jurisdiction if the defendant has "'continuous and systematic' contacts' with the forum."[19] The Court may find specific jurisdiction if the defendant has limited contacts with the forum, "as long as those contacts are of nature and quality to give the defendant fair warning that [it] could be required to defend a suit there."[20]

### 2. Defendant UHS of Texoma has ongoing contacts with Illinois.

Though omitted from its moving papers, Defendant UHS of Texoma has ongoing contacts with Illinois at least as follows:

- Since it began operations in 2007, UHS of Texoma has been a participating provider the network of BLUE CROSS-licensee HCSC—which is an Illinois corporation with its corporate headquarters in Illinois. UHS of Texoma makes about 8,000-10,000 claims a year to HCSC and is paid by HCSC in the amounts of $13,000,000-$15,000,000 a year.[21]

- UHS of Texoma has treated hundreds of patients who are members of Blue Cross and Blue Shield of Illinois. UHS of Texoma had at least as many as 227 claims from such patients in 2009 and 52 claims from such patients in 2010 to date (a pace of about 130+).[22] Plaintiff is informed and believes that an appreciable number of these patients are Illinois residents.[23]

- UHS of Texoma's website (which uses the offending logo) is accessible from Illinois.[24] Contrary to what Defendants claim, *it is not a passive website*. It allows online bill payment (with the payment screen expressly contemplating payer addresses from any state in the country)[25] and online submission of job applications.[26] Any Illinois residents who were patients may have made their

---

[18] *Pharmerica Corp.,* 2010 WL 1417460 at *2 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

[19] *The Ticketreserve, Inc. v. viagogo, Inc.,* 656 F. Supp. 2d 775, 781 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 (1984)).

[20] *Id.*

[21] *See* Plaintiff's Declaration of J.J. White ("White Decl.") ¶¶ 5,6.

[22] *See* Plaintiff's Declaration of Kari Hedges ("Hedges Decl.") ¶ 6.

[23] *See id*. While UHS of Texoma submitted a single declaration asserting it did not treat Illinois residents, disputes in evidence should be resolved in favor of Blue Cross. *See* discussion *supra* § III.A.1. Moreover, UHS of Texoma's declarant neither alleges facts that suggest that her job as Director of Marketing would give her any knowledge of the residency of patients nor alleges that she reviewed any documents, interviewed any colleagues, or made any attempt whatsoever to determine whether the company treats Illinois residents. *See* Defendants' Declaration of Jennifer Estes ("Estes Decl.") ¶¶ 2, 6.

[24] *See* Defendants' Memorandum at 3.

[25] *See* Req. for Jud. Ntc. Ex. G.

[26] *See id*. UHS of Texoma recruits nationally for physicians, medical professionals, and other employees, describing the advantages of living in Texas and advertising at times that it pays moving expenses; and it uses national job-listing sites that re-post UHS of Texoma's jobs on other websites such


payments to UHS of Texoma from Illinois.

- UHS of Texoma's website uses a DNS server located in Illinois.[27]

- UHS of Texoma's "HealthNews" newsletter (which uses the offending logo) is maintained on a separate website and is administered by a company called StayWell that has corporate offices in Illinois.[28]

- As described below, UHS of Texoma concedes it had prior knowledge—through repeated notice—of Blue Cross's rights in BLUE CROSS design marks and HCSC's licensed use of the marks; and it knew harm would be felt in Illinois.[29]

Given these contacts—and their nature—maintaining the suit in Illinois does not offend fair play or substantial justice.

    **3.    Defendant UHS of Texoma intentionally directed its acts toward Plaintiff Blue Cross in Illinois—thereby creating specific jurisdiction in Illinois.**

The [*Calder*] "effects doctrine" allows courts to exercise personal jurisdiction over a nonresident defendant when the defendant's intentional tortious actions aimed at the forum state cause harm to plaintiff in the forum state. . . . The doctrine permits the state in which the injury (and therefore the tort) occurred to entertain the suit, ***even if all other relevant conduct occurred outside the state***.[30]

In these circumstances, "whether or not [an act] is a tort in Illinois, it is *actionable* in Illinois."[31]

    **a.    Seventh Circuit and Northern District of Illinois case law underscores the applicability of the *Calder* effects doctrine to establish jurisdiction in trademark cases.**

One of the leading Seventh Circuit cases, *Indianapolis Colts, Inc.*,[32] applied the *Calder*

---

as those for the Chicago Tribune and Washington Post. *See* Req. for Jud. Ntc. Ex. O.

[27] *See* Req. for Jud. Ntc. Ex. N.

[28] *See* Req. for Jud. Ntc. Ex. R.

[29] *See* Complaint ¶¶ 19-24, 28 (alleging UHS of Texoma's prior knowledge and notice through Blue Cross's federal registrations, the fame of the marks at issue, the use of the marks at issue by Blue Cross and Blue Shield of Texas, actual notice, and communications from Defendants Universal Health Services and UHS of Delaware) *and* Estes Decl. (making no statements about UHS of Texoma's knowledge of or notice regarding Blue Cross's rights or regarding any harm being felt in Illinois). Because UHS of Texoma has not controverted these allegations in the Complaint, they must be taken as true for purposes of this motion. *See* discussion *supra* § III.A.1.

[30] *Pharmerica,* 2010 WL 1417460 at *3 (emphasis supplied) (citing *Calder v. Jones,* 465 U.S. 783, 788-90 (1984) and *Janmark, Inc. v. Reidy,* 132 F.3d. 1200, 1202-03 (7th Cir. 1997)).

[31] *Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1203 (7th Cir. 1997) (after discussion of . *Calder v. Jones,* 465 U.S. 783, 788-90 (1984) and *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Limited Partnership,* 34 F.3d 410 (7th Cir. 1994); *see also Indianapolis Colts, Inc.,* 34 F.3d at 411-12 (discussing *Calder* and finding also that defendant had entered the forum state by broadcasting Baltimore Colts games into Indiana).

[32] *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Limited Partnership,* 34 F.3d 410 (7th Cir. 1994).

effects doctrine in a trademark case:

> If the trademarks are impaired, as the suit alleges, the injury will be felt in Indiana. By choosing a name that might be found to be confusingly similar to that of the Indianapolis Colts, the defendants assumed the risk of injuring valuable property located in Indiana.[33]

The Northern District of Illinois similarly applied *Calder* in a trademark case in 2000, writing:

> [T]aking all jurisdictional allegations in the complaint as true, [Defendant's] alleged tortious actions establish personal jurisdiction over [Defendant] under the effects doctrine for three reasons: 1) if the Crate & Barrel's trademark has been infringed, the injury will be felt mainly in Illinois; 1) [Defendant] intentionally and purposefully directed its actions toward Illinois and Crate & Barrel, an Illinois corporation, allegedly causing harm to Crate & Barrel in Illinois; and 3) [Defendant] knew that harm would likely be suffered in Illinois.[34]

Other Illinois district courts have applied *Calder* and found jurisdiction, including in situations of alleged infringing use of marks in factual situations less compelling than those presented here: national advertising and on a website[35] and alleged infringing use of marks in a domain name and on a passive website.[36]

### b. Despite actual knowledge of Plaintiff Blue Cross's BLUE CROSS marks, Defendant UHS of Texoma changed its main uses of its cross logo from black to blue.

Defendant UHS of Texoma began operations in 2007, and it is undisputed that it knew of Plaintiff Blue Cross's rights in BLUE CROSS design marks from the beginning. Examples of notice to UHS of Texoma of Blue Cross's rights include:

- By operation of law, Blue Cross's federal registrations of BLUE CROSS design marks going back to the 1950s gave constructive notice to UHS of Texoma.[37]

- Blue Cross's BLUE CROSS design marks have been famous—at least as early as the first court decisions holding them to be famous in 1985[38] and likely earlier.

---

[33] *Id.* at 411; *see also id.* at 412 (finding jurisdiction because of this direction of harm combined with the "entering" of Indiana by television broadcasts of Baltimore Colts football games).
[34] *Euromarket Designs, Inc. v. Crate & Barrel Limited,* 96 F. Supp. 2d 824, 836 (N.D. Ill. 2000).
[35] *See Bunn-o-Matic Corp. v. Bunn Coffee Service, Inc.,* Case No. 97-3259, 46 U.S.P.Q.2d (BNA) 1375, 1376, 1378 (N.D. Ill. Mar. 31, 1998).
[36] *See McMaster-Carr Supply Co. v. Supply Depot, Inc.,* Case No. 98 C 1903, 1999 WL 417352, *1, *5, *7 (N.D. Ill. June 16, 1999).
[37] Lanham Act § 22, 15 U.S.C. § 1072 (2010); *see also* Complaint Ex. A, B (selected registrations).
[38] *See Blue Cross and Blue Shield Ass'n v. Blue Cross Mutual Clinic, Inc.,* 227 U.S.P.Q. (BNA) 474, 476 (S.D. Fla. 1985) (concluding that, "THE ASSOCIATION'S BLUE CROSS word mark and BLUE

- UHS of Texoma knew of Blue Cross's BLUE CROSS design marks because of its relationship with Blue Cross's licensee, HCSC.[39] It further knew that HCSC was a licensee of Blue Cross.[40]

- On more than six occasions, Blue Cross wrote to Universal Health Services and UHS of Delaware, giving specific notice of Blue Cross's rights in the BLUE CROSS marks and notifying that they should not be using blue cross designs for healthcare services.[41] These companies even responded, promising not to use cross logos at issue in blue.[42] UHS of Texoma knew of these notices from its parent, Universal Health Services, and its licensor of the Texoma Blue Cross Mark at issue, UHS of Delaware.[43]

Although it knew of Blue Cross's rights, and HCSC's licensed use, UHS of Texoma decided to change its main cross logo—a Greek cross in the same shape as Blue Cross's BLUE CROSS marks—from black to blue. At its beginning in 2007, the UHS of Texoma website displayed the cross logo on the front page in black—and its quarterly "HealthNews" newsletter displayed the cross logo across the top in black.[44] This remained the case all the way up until June 2009. In June 2009, UHS of Texoma changed the main cross logo on the front page of its website from black to blue.[45] At this time, its newsletters continued to use the logo in black.[46] Only in Fall 2009 did the newsletters change to blue.[47] Expanding on these changes to blue, UHS of Texoma opened a new building in December 2009,[48] which also uses the logo in blue.

With prior notice and knowledge, UHS of Texoma directed these acts of infringement and dilution to Blue Cross and HCSC, knowing that the impact would be felt in their home state of Illinois. The Court has specific jurisdiction—and should deny the motion to dismiss.

      c. **Defendant UHS of Texoma's jurisdictional arguments and case law regarding damages being felt in Illinois fail to discuss the *Calder***

---

CROSS design marks are famous strong marks, whether used in association with one another or independently, in the identification of pre-paid financing and administration of medical, hospital and related health care services and in the provision of health care services.")

[39] *See* White Decl. ¶ 5; Req. for Jud. Ntc. Ex. H; Complaint ¶¶ 17, 19.
[40] *See id.*
[41] *See* Complaint ¶ 21-24, 28; Cecil Decl. ¶¶ 7-9, 11-20 & Ex. A-C, E-N.
[42] *See* Cecil Decl. ¶ 6 & Ex. D.
[43] *See* Complaint ¶ 20. Because UHS of Texoma has not controverted these allegations in the Complaint, they must be taken as true for purposes of this motion. *See* discussion *supra* § III.A.1.
[44] *See* Req. for Jud. Ntc. Ex. P, Q.
[45] *See id.*
[46] *See id.*
[47] *See id.*
[48] *See id.* Ex. M.

2341334.7

**"effects doctrine"—and fail accordingly.**

Defendant UHS of Texoma fails to address the Calder "effects doctrine" in its moving papers. The two cases it cites, *Berthold Types Ltd. v. European Mikrograf Corp.,* 102 F. Supp. 2d 928 (N.D. Ill. 2000) and *Lifeway Foods, Inc. v. Fresh Made, Inc.,* 940 F. Supp. 1316 (N.D. Ill. 1996), both focus on the section of the Illinois long-arm statute allowing jurisdiction for "[t]he commission of a tortious act within this State."[49] Neither discusses the *Calder* "effects doctrine," which arises under the section of the statute allowing jurisdiction on any constitutional basis.[50] Likewise, none of UHS of Texoma's arguments address *Calder.* They therefore do not control, and the Court should deny UHS of Texoma's motion to dismiss.

**B.   BECAUSE THERE IS PERSONAL JURISDICTION OVER DEFENDANT UHS OF TEXOMA, THERE IS ALSO PROPER VENUE.**

Venue is proper in a "judicial district where any defendant resides, if all defendants reside in the same State"[51]; and for purposes of venue, corporate defendants reside "in any judicial district in which [they are] subject to personal jurisdiction. . . ."[52] There is personal jurisdiction over Defendant UHS of Texoma as discussed above, and Defendants UHS of Delaware and Universal Health Services do not contest jurisdiction—meaning this Court is a proper venue.[53] UHS of Texoma's motion to dismiss for improper venue should be denied.

**C.   DEFENDANT UHS OF TEXOMA IS NOT A NECESSARY OR INDISPENSABLE PARTY UNDER RULE 19—AND IF THE COURT DISMISSES UHS OF TEXOMA, THE CASE SHOULD PROCEED WITH THE REMAINING DEFENDANTS.**

A 12(b)(7) motion to dismiss arguing that indispensable parties have failed to be joined as required by Rule 19 requires a two-step analysis. First, we must determine whether or

---

[49] *See Berthold Types Ltd. v. European Mikrograf Corp.,* 102 F. Supp. 2d 928, 931-32 (N.D. Ill. 2000) (discussing 735 Ill. Comp. Stat. 5/2-209(a)(2)—never mentioning 735 Ill. Comp. Stat 5/2-209(c) or *Calder* effects doctrine); *Lifeway Foods, Inc. v. Fresh Made, Inc.,* 940 F. Supp. 1316, 1319 (N.D. Ill. 1996) (discussing 735 Ill. Comp. Stat. 5/2-209(a)(2)—mentioning 735 Ill. Comp. Stat 5/2-209(c) but discussing in context of general jurisdiction and never raising or discussing *Calder* effects doctrine).
[50] *See id.*
[51] 28 U.S.C. § 1391(b)(1).
[52] 28 U.S.C. § 1391(c).
[53] *Cf. Signode v. Sigma Technologies Int'l, LLC,* Case No. 09 C 7860, 2010 WL 1251448, *4 (N.D. Ill. Mar. 24, 2010) ("Because [Defendant] is subject to personal jurisdiction in Illinois, its motion to dismiss based on improper venue is also denied.")

> not a party is necessary. . . . To determine if a party is necessary . . ., courts examine whether: (1) complete relief can be accorded among the present parties to the lawsuit; (2) the absent party's ability to protect its interest will be impaired; and (3) any existing parties might be subjected to a substantial risk of multiple or inconsistent obligations unless the absent party is joined.
>
> Second, if a party is found to be necessary under Rule 19(a) . . . the court must then decide if the action can proceed in equity and good conscience without the necessary party, . . . [considering the following factors]: (1) a judgment entered in the absence of the missing party will be prejudicial to the absent or existing party; (2) any such prejudice can be lessened or avoided by reshaping the judgment; (3) the judgment will be adequate; and (4) the plaintiff will have an adequate remedy if the action is dismissed.[54]

Generally speaking, "[c]ourts are 'reluctant to dismiss for failure to join where doing so deprives the plaintiff of his choice of federal forum.'"[55]

Other courts have addressed facts similar to this case, and their reasoning is both instructive and persuasive. One federal court noted "persuasive authority that ***subsidiary corporations who make use of a trade name owned by their parent corporations are not necessary parties to an infringement action against the parent***."[56] The court then remarked that the trademark was owned by a parent company still in the case, meaning that remedies relating to damages and cancellation could be effected[57]; and it discussed that injunctions bind "not only the parties before the court but their agents and those 'in active concert or participation with them,'" meaning that injunctive remedies could be effected against the parent and its subsidiaries.[58] The court further concluded that the interests of the subsidiary companies not in the case were "fully and adequately protected by their parent" and denied a motion to dismiss.[59]

Similarly, another federal court addressed a case in which franchisees using a trademark at issue were absent from the case:

---

[54] *BAB Systems, Inc. v. Pilatus Investment Group Inc.,* Case No. 05 C 3038, 2005 WL 2850119, *4 (N.D. Ill. Oct. 27, 2005) (internal citations and quotation marks omitted).

[55] *Askew v. Sheriff of Cook County*, 568 F.3d 632, 635 (7th Cir. 2009) (quoting *Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477 (7th Cir. 2001)).

[56] *Texaco, Inc. v. Allied Chemical Corp.*, 193 U.S.P.Q. (BNA) 716, 718 (S.D.N.Y. 1974) (emphasis supplied) (citing *American Plan Corp. v. State Loan and Finance Corp.,* 278 F. Supp. 846 (D. Del. 1968)).

[57] *Id.* at *6-*7.

[58] *Id.* at *7.

[59] *Id.* at *9.

9

2341334.7

> The franchisees' absence from this action will not impair or impede their ability to protect their interest in the "Ace" name because these interests are, as a practical matter, identical with defendant's interest, and defendant is actively litigating this case. Nor will defendant suffer a substantial risk of double, multiple or otherwise inconsistent obligations. Defendant, not its franchisees, has registered the "Ace" service mark. If defendant wins, its franchise agreements will remain unmodified; if it loses, the trademark provisions in defendant's contracts must be altered to reflect defendant's own change. Having failed either of the threshold tests in Rule 19(a), we need not proceed to consider dismissal under the four-factor test of Rule 19(b).[60]

Here, UHS of Texoma is a wholly-owned subsidiary of Universal Health Services[61]; and it does not own the Texoma Blue Cross Mark.[62] Rather, UHS of Delaware, another wholly-owned subsidiary of Universal Health Services,[63] purports to own that mark. UHS of Delaware's public filings indicate this ownership claim—and indicate it allows use of the marks by related companies and licensees.[64] These clarify that UHS of Texoma is simply a related company or licensee of UHS of Delaware in its use of the Texoma Blue Cross Mark (or at most a joint tortfeasor[65]); and the Texoma Blue Cross Mark is owned and controlled by UHS of Delaware.[66]

These facts parallel those considered by the courts above. Universal Health Services and UHS of Delaware own or control UHS of Texoma, as parent or licensor;[67] and any use of the Texoma Blue Cross Mark by UHS of Texoma is already subject to one or both of Universal Health Services' and UHS of Delaware's ownership or control. Accordingly, without UHS of Texoma, complete relief can be effected; UHS of Texoma's interests will be sufficiently represented by Universal Health Services and UHS of Delaware; and there is no risk of multiple

---

[60] *Ace Hardware Co., Inc. v. Ace Hardware Corp.,* 214 U.S.P.Q. (BNA) 195, 197 (N.D.N.Y. 1981).
[61] *See* Req. for Jud. Ntc. Ex. C, G.
[62] *See generally* Estes Decl. (making no reference to UHS of Texoma owning the mark at issue).
[63] *See* Req. for Jud. Ntc. Ex. B, C.
[64] *See* Req. for Jud. Ntc. Ex. F.
[65] *See* Cargo Pacific Logistics, Inc. v. Concord Express, Inc., Case No. 96 C 2558, 96 C 2730, 1996 WL 699949, *4 (N.D. Ill. Nov. 26, 1996) ("The law is clear that a party is not an indispensable party simply because it is a joint tortfeasor"); *Kar Kraft Eng'g v Shelby,* Case No. 06-14034, 2007 WL 1544397, *2 (E.D. Mich. May 25, 2007) (in context of trademark suit, "plaintiff may choose whom to sue and is not required to join all infringers in a single action").
[66] In its moving papers, Defendants assert that, "The Texoma Mark is controlled by Texoma and Texoma alone." Defendants' Memorandum at 10. But this assertion is made without citation to any evidence. The single declaration that Defendants submitted with their moving papers makes no reference to "control" of the Texoma mark.
[67] *See* Req. for Jud. Ntc. Ex. B, C, S (showing UHS of Texoma listed as subsidiary, showing it using the same HIPAA statement as the broader UHS system, among others).

or inconsistent obligations. UHS of Texoma is not a necessary party, making it moot whether it is indispensable; and the Court should deny Defendants' motion to dismiss.

**D.     DEFENDANTS' MOTION TO TRANSFER SHOULD BE DENIED BECAUSE THEY HAVE FAILED TO MEET THEIR EVIDENTIARY BURDEN FOR SHOWING INCONVENIENCE.**

In considering a motion to transfer, "[c]ourts typically defer to the plaintiff's choice of forum, particularly when the plaintiff resides in the district selected."[68] A transfer "should not merely 'shift the convenience from one party to another.'"[69] Furthermore, the parties seeking transfer bear the burden of specifically identifying witnesses and documents for which the location is alleged to be inconvenient—and establishing their materiality to the case.[70] Materiality is important: "courts must look to the nature and quality of the witnesses' testimony with respect to the issues, not just the number of witnesses in each venue."[71]

> **1.     The documents and witnesses related to the claims and defenses in this case are located at a minimum in Illinois, Pennsylvania, Virginia, and Texas— meaning that a transfer would merely shift the alleged inconvenience from Defendant UHS of Texoma to Plaintiff Blue Cross (and possibly other Defendants and non-parties, who are located closer to Illinois than Texas).**

In trying to argue that all documents and witnesses are in Texas, Defendants make obviously one-sided and incorrect assumptions about the case. They seem to suggest that Plaintiff has no material witnesses or documents;[72] and they even ignore the fact that two of the

---

[68] *Abbott Laboratories v. Church & Dwight, Inc.*, Case No. 07 C 3428, 2007 WL 3120007, *2 (N.D. Ill. Oct. 23, 2007); *see also Pharmerica Corp. v. Adv. Healthcare Sol'ns, LLC,* Case No. 10 C 349, 2010 WL 1417460, *5 (N.D. Ill. Apr. 5, 2010) ("the plaintiff's choice of forum is rarely disturbed unless the balance of all factors is strongly in favor of the defendant") (citing *In re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 664-65 (7th Cir. 2003); *Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.,* Case. No. 06 C 3183, 2007 WL 1560212, *5 (N.D. Ill. May 29, 2007).
[69] *Flexicorps, Inc.,* 2007 WL 1560212 at *5.
[70] *See, e.g., Flexicorps, Inc.,* 2007 WL 1560212 at *5 ("Defendants bear the burden of establishing through affidavits, depositions or other documents the location of witnesses and documents and their materiality to the issues in the case."); *Valero Marketing & Supply Co. v. Southcap Pipe Line Co.,* Case No. 06-cv-0623-MJR, 2007 WL 2229866, *3 (N.D. Ill. Aug. 2, 2007) ("**The party seeking transfer must specify the key witnesses to be called and establish that the nature and quality of their testimony with respect to the issues of the case warrant the case's transfer**." (emphasis supplied) (citing *Brady v. Hanger Orthopedic Group, Inc.*, 2006 WL 2560953, *2 (N.D. Ill. 2006)) .
[71] *Valero Marketing & Supply Co.*, 2007 WL 2229866 at *3.
[72] *See* Defendants' Memorandum at 13 ("The Complaint does not identify any actors in the State of Illinois") (with no comment or discussion on sections of the complaint discussing Blue Cross's rights

2341334.7

three defendants bringing the motion are headquartered in Pennsylvania (not Texas)[73]—including the one who claims to own the Texoma Blue Cross Mark at issue.

Defendant UHS of Texoma only began operations in January 2007.[74] According to Defendants' own press releases and filings, it is Defendant Universal Health Services that acquired the assets of the Texoma Healthcare System in January 2007.[75] Therefore, witnesses and documents relating to the transaction in which any pre-existing trademark rights were transferred to any of the Defendants would also be with Universal Health Services.

It is Defendant UHS of Delaware that claims to own the Texoma Blue Cross Mark—and filed six applications for federal registration of marks incorporating the Texoma Blue Cross Mark.[76] Therefore, witnesses and documents relating to any claimed ownership of these rights and to these applications would be with UHS of Delaware. For instance, the signatory to the six applications stating these claims of ownership is with UHS of Delaware.

Moreover, though Defendants claim that UHS of Texoma is the only defendant using the Texoma Blue Cross Mark,[77] UHS of Delaware is the listed owner of the domain name www.texomamedicalcenter.net, at which UHS of Texoma's website is accessible.[78] Universal Health Services appears to have hired the vendor used to design and develop this website—a company called Studioality in Pennsylvania.[79] There is yet another website at uhspublications.com, which hosts and publishes UHS of Texoma's "HealthNews" newsletter—and the owner of that domain name and the administrator of the website are a company called StayWell that has its corporate offices in Illinois.[80] Witnesses and documents relating to current and historical website and online-newsletter use of the Texoma Blue Cross Mark are therefore

---

which form the basis of its claims).
[73] *See* Defendants' Memorandum at 1-15 (entire discussion of documents and witnesses omits any reference to Defendants UHS of Delaware and Universal Health Services); Req. for Jud. Ntc. Ex. B, D, E.
[74] *See* Req. for Jud. Ntc. Ex.B.
[75] *See* Req. for Jud. Ntc. Ex. B.
[76] *See* Req. for Jud. Ntc. Ex. F.
[77] *See* Defendants' Memorandum at 2; Estes Declaration ¶ 4 at 2-3 .
[78] *See* Req. for Jud. Ntc. Ex. N.
[79] *See* Req. for Jud. Ntc. Ex. N.
[80] *See* Req. for Jud. Ntc. Ex. R.

2341334.7

with UHS of Delaware, Universal Health Services, and their vendors Studioality and StayWell.

While there are undoubtedly some witnesses and documents in Texas, there are at a minimum witnesses and documents outside of Texas as follows:

- Blue Cross's corporate offices are in Illinois.[81]

- Blue Cross's records—including those regarding its marks at issue, the fame of those marks, and the history of those marks going back 75 years—are located at its corporate offices in Illinois.[82]

- Blue Cross's witnesses live and work in Illinois.[83]

- Universal Health Services and UHS of Delaware have their corporate offices in Pennsylvania. Their website vendor Studioality is also located in Pennsylvania. Their online-newsletter vendor is located in Illinois. The witnesses and documents described above are therefore likely to be located in Pennsylvania and Illinois.

- Universal Health Services and UHS of Delaware have both used outside counsel located in Virginia for prosecution of its trademark applications[84]—including the ones at issue in this litigation.[85] It is likely that files relating to these trademark applications are located in Virginia.

Again, ***witnesses and over 75 years worth of documents are located in Illinois***; documents of one of Defendants' vendors are located in Illinois; and the Northern District of Illinois is closer and more accessible[86] than the Eastern District of Texas for the other mentioned locations of Pennsylvania and Virginia.

Also, UHS of Texoma has medical facilities in Oklahoma,[87] and it has business offices in Pennsylvania.[88] In fact, it lists its Pennsylvania offices—not its Texas offices—in its corporate filings with the Texas Secretary of State, its listed address with Texas local agencies issuing real-property assessments, and in its regulatory filings with the Texas Department of State Health Services.[89] With such important records being sent to and from offices in Pennsylvania, there

---

[81] *See* Complaint ¶ 3.
[82] *See* Cecil Decl ¶ 3.
[83] *See* Cecil Decl ¶ 3.
[84] *See* Cecil Decl Ex. A-N; Req. for Jud. Ntc. Ex. F.
[85] *See* Req. for Jud. Ntc. Ex. F.
[86] *See* Req. for Jud. Ntc. Ex. T.
[87] *See* Req. for Jud. Ntc. Ex. G.
[88] *See* Req. for Jud. Ntc. Ex. I, J, K.
[89] *See id.*

may also be UHS of Texoma witnesses and documents in Pennsylvania.

Though moving to the Eastern District of Texas might be preferred by UHS of Texoma, it compounds the inconvenience for Plaintiff, two of the Defendants, and non-party vendors of the parties. This fails to meet the standards for transfer; and Defendants' motion should be denied.

### 2. Defendants' claim that customers in Texas are material third-party witnesses is unsupported by law—and is further unsupported by evidence.

Defendants also argue that a "critical consideration" is the location of patients of UHS of Texoma, because they will be "important witnesses to this case to determine whether customer confusion occurred." Defendants do not specifically identify any such witnesses. Even if they had, they have made no showing of materiality—why the testimony of an individual witness (or some number of individual witnesses) stating that he or she is not confused or otherwise drawing conclusions regarding infringement is probative.[90] Generally, such testimony is *not* probative—and it is other types of evidence that relate to likelihood of confusion:

> There are at least three evidentiary routes to prove a likelihood of confusion: 1. Survey evidence; 2. Evidence of actual confusion; and/or 3. Argument based on an inference arising from a judicial comparison of the conflicting marks themselves and the context of their use in the marketplace. . . . .
> [T]he likelihood that purchasers will be confused must ultimately rest on the inference to be drawn from circumstantial evidence.[91]

None of these contemplate individual customer testimony on confusion (for a defendant). Even if such witnesses were material, there may be relevant customers in states other than Texas. As mentioned,[92] UHS of Texoma has treated hundreds of patients who are members of Blue Cross and Blue Shield of Illinois. There may be other patients covered by other BLUE CROSS plans or by other national insurers. In sum, the Court should deny Defendants' motion to transfer.

---

[90] *Compare CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 686 ("the most that the absence of evidence of actual confusion can be said to indicate is that the record does not contain any evidence of actual confusion known to the parties (citing MCCARTHY ON TRADEMARKS with approval)).

[91] 4 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:63 (4th ed. 2010); *see also* 3 Anne Gilson LaLonde, GILSON ON TRADEMARKS, § 8.11[1] (2009). ("The courts and commentators now regard [surveys] as the most probative evidence practicable on the frequently complex issues of secondary meaning and likelihood of confusion.")

[92] *See* discussion *supra* § III.A.2.

**E.      The Court Should Decline to Consider Any New Evidence Defendants May Submit with Their Reply Brief—or Allow Plaintiff Blue Cross an Adequate Opportunity to Investigate and Respond to Any Such New Evidence.**

All of the issues in this brief were contemplated or raised directly by Defendants in their motion. Defendants have had a copy of the Complaint in this action since December 2009.[93] Accordingly, they have had ample opportunity to consider and introduce evidence on these arguments with their moving papers. Should Defendants attempt to introduce new evidence with their reply, the Court should decline to consider it.[94] If the Court were to choose to consider any such new evidence, however, it should allow Plaintiff the opportunity to investigate and respond to the evidence—including the opportunity to conduct discovery.[95]

## IV.      CONCLUSION

For the reasons stated above, and based on the evidence submitted, Plaintiff Blue Cross respectfully requests that the Court deny all of Defendants' motions to dismiss or transfer.

Respectfully submitted,

PLAINTIFF BLUE CROSS AND BLUE SHIELD ASSOCIATION

By    /s/ Garner Weng
          One of Its Attorneys

---

[93] *See* Plaintiff's Declaration of Garner Weng ¶ 3.

[94] *Securities and Exchange Comm'n v. Homa*, Case No. 99 C 6895, 2006 WL 3267645 at *8 n.7 (N.D. Ill. Nov. 6, 2006) (declining to consider new evidence submitted with reply brief because it "merely addresse[d] arguments either contemplated or raised by [moving party] itself.").

[95] *See id.* (noting the "Court cannot consider the new evidence unless and until the [non-movant] has an opportunity to respond. To do so would be extremely unfair to the [non-movant, which would] need to depose [the moving party's] purported officers and directors. . . ."); *see also Black v TIC Investment Corp.,* 900 F.2d 112, 116 (7th Cir. 1990) ("Where new evidence is presented in a reply . . . the district court should not consider the evidence without giving the [other party] an opportunity to respond.").