# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 7935 | **DATE** | 7/9/2010 |
| **CASE TITLE** | BLUE CROSS AND CLUE SHIELD ASSOCIATION vs. UHS OF DELAWARE INC et al | | |

**DOCKET ENTRY TEXT**

Defendants' motion to transfer [22] is denied. Defendant UHS of Texoma's motion to dismiss for lack of personal jurisdiction and improper venue is denied. UHS and UHS of Delaware's motion to dismiss for failure to join an indispensable party is denied as moot in light of the Court's denial of Texoma's Motion.

■[ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

Plaintiff Blue Cross and Blue Shield Association ("BCBS") filed this suit against Defendants UHS of Delaware, Inc., UHS of Texoma, Inc. ("Texoma"), Texomacare, Universal Health Services, Inc. ("UHS"), and Does 1-10 (collectively "Defendants") alleging federal trademark infringement, false designation of origin, dilution, and common-law trademark infringement and unfair competition. Texoma has moved to dismiss the Complaint against it for lack of jurisdiction and improper venue, UHS of Delaware and UHS have moved to dismiss for failure to join an indispensable party, and all three have moved to transfer this case to the United States District Court for the Eastern District of Texas. For the reasons set forth below, the Defendants' Motions are denied.[1]

The following facts are taken from BCBS's Complaint and are assumed to be true for purposes of the Defendants' Motions to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). BCBC is a non-profit corporation headquartered in Chicago, Illinois. (Compl. ¶ 3.) UHS is a Delaware corporation that operates various medical facilities throughout the country, including in Illinois. (Compl. ¶ 7.) UHS of Delaware and Texoma are subsidiaries of UHS that are incorporated in Delaware and Texas, respectively. (Compl. ¶¶ 4-5.) UHS of Delaware, the management arm of UHS, owns, licenses, and manages the trademarks and service marks used within that system, including their use by subsidiaries such as Texoma. (Compl. ¶ 18.)

BCBS is the owner of trademarks and service marks including the phrases "Blue Cross" and "Blue Shield" and design logos representing a blue cross or blue shield, and licenses the use of its marks to various entities engaged in the business of providing health insurance, health care delivery, health care financing, and related goods and services. (Compl. ¶ 12.) A number of BCBS trademarks have become incontestable pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1065. (Compl. ¶ 13.) Among the most famous of BCBS's registered trademarks and service marks is a design logo displaying a Greek cross—that is, a cross consisting

| STATEMENT |
|---|

of four equal-length arms at right angles—in one of a variety of shades of blue. (Compl. ¶ 14.) The fame of the blue Greek cross, and its association with BCBS's products and services, has been recognized by federal district courts and other legal entities for more than thirty years. (Compl. ¶ 16.)

The Defendants have both constructive and actual notice of BCBS's rights in its various federally-registered marks, including the blue Greek cross design. (Compl. ¶¶ 19-20.) BCBS contacted UHS of Delaware on several occasions regarding the use of cross designs in other colors, such as red and white, in various logos and federal trademark registrations. (Compl. ¶¶ 21-24.) In those communications, BCBS notified UHS of Delaware of its rights in the blue Greek cross design and "warned that it would have concerns . . . should the cross design be used in blue." (Compl. ¶¶ 21-24.) Defendants also had actual and constructive knowledge that BCBS is headquartered in Illinois and that, as a result, any infringement of BCBS's trademarks "would cause harm to [BCBS] in Illinois." (Compl. ¶ 32; *see also* Compl. ¶ 19.)

Nevertheless, Defendants eventually began using a logo prominently featuring a blue Greek cross "in connection with a range of medical, hospital, and healthcare services." (Compl. ¶ 25.) The logo at issue ("the UHS logo") comprises a dark-blue Greek cross with a pair of white hands holding a red heart at the center of the arms of the cross. (Compl. ¶ 25.) UHS of Delaware then submitted a number of federal trademark applications incorporating this logo, each of which combined the logo with certain phrases and words. (Compl. ¶¶ 26-27.)

BCBS wrote to UHS of Delaware regarding one specific use of the UHS logo in connection with the words "Texoma Medical Center" after UHS of Delaware filed an application for federal registration of that logo-word combination, and asserting its rights in the use of the blue Greek cross design and its associated marks. (Compl. ¶ 28.) However, Defendants continued to use the Texoma Medical Center UHS logo in a variety of advertising and promotional materials, including on at least two nationally-accessible websites. (Compl. ¶ 29.) Due to the similarity in the marks and the similarity in services provided by BCBS and Defendants in connection with the marks, the UHS logo is "likely to confuse, cause mistake among, or deceive the relevant public into believing that Defendants are sponsored by, endorsed by, or in some manner related to" BCBS or its authorized licensees. (Compl. ¶ 31.)

In reviewing a motion to dismiss for lack of personal jurisdiction, the Court accepts all well-pleaded factual allegations in the Complaint as true unless controverted by affidavits outside the pleadings, which the Court may consider. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). Factual disputes are construed in the plaintiff's favor. *See Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996). When a defendant challenges the exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that personal jurisdiction exists.[2] *See Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). Where, as here, the Court decides a motion challenging jurisdiction on the basis of written submissions, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

Even in federal question cases such as this one, the Court is required "to determine whether the state in which the district court is located is authorized to exercise personal jurisdiction" in order to ascertain whether it has personal jurisdiction over a defendant. *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201 (7th Cir. 1997). Illinois's long arm statute allows the exercise of personal jurisdiction "on any basis permitted by the Illinois and United States constitutions." *See* 735 ILCS 5/2-209©. Although the due process provisions of the Illinois and United States Constitutions are not identical, "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l.*, 302 F.3d at 715. Personal

jurisdiction is proper, therefore, only if the defendant has "minimum contacts" with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction may be either general or specific. *See Helicopteros Nationales de Columbia v. Hall*, 466 U.S. 408, 414 (1984).

BCBS argues that the Court has both general and specific jurisdiction over Texoma. As the Court finds that specific jurisdiction exists on the fact of BCBS's Complaint and that the facts giving rise to specific jurisdiction have not been controverted by the Defendants' affidavits, the Court need consider only the dispositive issue of whether there is specific jurisdiction over Texoma. Specific jurisdiction allows the Court to exercise jurisdiction over a defendant whose contacts with the forum state are limited, as long as those contacts are of a nature and quality as to give the defendant fair warning that he could be required to defend a suit there. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *Central States, Se. & Sw. Areas Pension Fund. v. Reimar Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). In determining whether specific jurisdiction exists over an out-of-state defendant, the Court must determine whether the minimum contacts between the defendant and the forum state demonstrate that the defendant "purposefully availed itself of the privilege of conducting activities" in the forum state such that it "should reasonably anticipate being haled into court" in that state. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997).

Specific jurisdiction is foreseeable, and thus may be exercised, in cases where the defendant's intentional tortious actions aimed at the forum state cause harm to plaintiff there, on the grounds that the defendant's actions constitute fair warning of potential liability in the courts of that state. *See Calder v. Jones,* 465 U.S. 783, 788-90 (1984). The "effects doctrine" permits the state in which the injury (and therefore the tort) occurred to entertain the suit, even if all other relevant conduct occurred outside the state. *See Janmark,* 132 F.3d at 1202-03. In trademark cases, such as this one, the property impairment—and thus the economic harm—is felt in the state where those trademarks are held, that is, where the trademark holder is headquartered. *See Indianapolis Colts, Inc. v. Metro. Baltimore Football Club*, 34 F.3d 410, 411-412 (7th Cir. 1994).

It is undisputed that BCBS is headquartered in Illinois and that if it suffers economic harm as a result of Defendants' alleged infringement of its trademarks, that harm will be felt in Illinois. It is also undisputed that Defendants had actual and constructive knowledge of BCBS's rights in the blue Greek cross logo and associated trademarks, and that BCBS contacted Defendants with respect to the Texoma Medical Center UHS logo after Defendants began using that logo. Thus, the Defendants were aware of their potential infringement of trademarks owned by an Illinois corporation, and therefore were aware that they could potentially be held liable for harm caused to BCBS by that infringement.

Defendants argue, however, that under *Calder* and *Indianapolis Colts* the effects doctrine does not confer personal jurisdiction unless the Defendants made an affirmative act of entry into the forum state. However, the Seventh Circuit explicitly stated in *Indianapolis Colts* that the court was not holding that entry into the forum state was "indispensable" to the assertion of personal jurisdiction over a defendant who had caused economic harm in the state. *See id.* at 412. Even were the entry requirement a hard-and-fast rule, the entry asserted in *Indianapolis Colts* was that the defendants had nationally broadcast television programs using an infringing mark, which was likely to have been viewed in the forum state. *See id.* Similarly, BCBS has alleged that Defendants produced nationally-accessible websites prominently displaying the Texoma Medical Center UHS logo. Moreover, BCBS has alleged that both the websites and other forms of advertising were disseminated widely and could have been seen in Illinois as well as in other states. Other courts within the Seventh Circuit, following *Indianapolis Colts*, have held that maintenance of national websites and national advertising campaigns can constitute an entry into the state where the trademark holder is located for purposes of personal jurisdiction. *See, e.g.*, *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 836 (N.D. Ill. 2000) (personal

jurisdiction existed where, among other actions, defendant "deliberately designed an Internet website using an Illinois company's mark with the knowledge that this conduct would likely injure Plaintiff in Illinois, its place of incorporation and principal place of business"); *Bunn-O-Matic Corp. v. Bunn Coffee Serv.*, 46 U.S.P.Q.2d 1375 (C.D. Ill. 1998) (noting that "even if an entry requirement exists at all, it can be met by conduct falling within an extremely broad definition of 'entry'" and holding that defendant's non-interactive website, which was accessible to residents of plaintiff's home state, constituted an entry into the state).

Thus, under the circumstances as alleged in BCBS's Complaint, Texoma and the other Defendants could have foreseen that BCBS would file suit in Illinois to protect its Illinois-based trademarks against alleged infringement that is accessible from within Illinois and would cause an economic harm in Illinois. This Court therefore has specific jurisdiction over Texoma for purposes of this litigation, and Texoma's Motion to Dismiss is denied.

Defendants further argue that venue is improper in this district. However, as venue is proper in "a judicial district where any defendant resides," and a corporate defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced," the Court's finding that there is personal jurisdiction over Texoma moots the arguments regarding venue, Defendants having conceded that there is personal jurisdiction over UHS and UHS of Delaware. 28 U.S.C. § 1391(b) & ©. Further, because the Court will not dismiss Texoma as a Defendant, Defendants' arguments regarding the applicability of Rule 19 and their Motion to Dismiss for failure to join an indispensable party are also denied as moot.

Finally, Defendants have moved to transfer this case to the Eastern District of Texas. Generally, a plaintiff's selection of the forum in which it resides for the prosecution of an action is given substantial weight. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981); *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 803 (7th Cir. 1997). However, 28 U.S.C. § 1404(a) requires courts to determine whether a requested transfer would increase "the convenience of the parties and witnesses" and advance "the interest of justice." *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). The plaintiff's choice of forum is one factor in this analysis, but is not conclusive, as the Court must also consider "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). The Court has a great deal of discretion in weighing these factors, and the decision to transfer must be made on a case-by-case basis. *See Coffey,* 796 F.2d at 219.

Here, Texoma's strongest arguments in favor of transferring this case to Texas are (1) improved convenience for its employees and witnesses, (2) improved access to physical evidence, and (3) the interests of the Texas forum in policing marks that are displayed primarily upon buildings located in Texas. As to the first factor, Texoma argues that a transfer will improve convenience and access to the forum for its employees, including the designers of the challenged mark, and of its patients, whose testimony will assertedly be critical to the determination of whether the alleged infringement has caused any customer confusion. However, Texoma does not adequately explain how § 1404(a) would allow it to shift the burden of travel to a distant court from the Defendants—who are not even all located in Texas, as both UHS and UHS of Delaware are incorporated in Delaware—to BCBS and its chosen attorneys. Nor has Texoma explained why the live testimony of customers will be critical to the Court's confusion analysis, as evidence of customer confusion is usually, and more persuasively, presented in the aggregate in the form of consumer surveys and not in the form of individual testimony by individual consumers. The second factor advanced by Texoma, the location of physical evidence, is also not persuasive in favor of a transfer, particularly as, again, certain evidence is as likely to be located in Delaware as in Texas, and the burden in this respect would, again, only be shifted to BCBS, and not eliminated. Finally, the Texas court's interest in policing the trademarks used in its district cannot sensibly be deemed more

| STATEMENT |
|---|
| persuasive than this Court's interest in protecting trademarks registered here, and the Defendants have tellingly presented no legal authority in support of their position to this effect.<br><br>     Overall, therefore, the Court does not find that a transfer will improve convenience for the parties or for critical witnesses, nor will the interests of justice be advanced by a transfer. Therefore, the Defendants' Motion to Transfer Venue to the United States District Court for the Eastern District of Texas is denied.<br><br>     Texoma's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue is denied. UHS and UHS of Delaware's Motion to Dismiss for Failure to Join an Indispensable Party is denied as moot in light of the Court's denial of Texoma's Motion. The Defendants' Motion to Transfer Venue to the Eastern District of Texas is denied. |

1. Defendant Texomacare has apparently not yet been successfully served; no waiver of service or return of service has been filed with the Court. As this case was filed on December 22, 2009, BCBS is hereby advised of the requirements of Federal Rule of Civil Procedure 4(m) and directed to serve Texomacare within fourteen days from the date of this Order.

2. Pursuant to Federal Rule of Evidence 201, BCBS has asked the Court to take judicial notice of the contents of twenty separate exhibits. As the taking of judicial notice is required under Rule 201(d) upon request of a party who has supplied the Court with the necessary information, the Court takes judicial notice of the information contained within BCBS's proferred exhibits.